DUDLEY TUBB'S ADMR. *v.* CINCINNATI SOUTHERN R. CO.

[Abstract Kentucky Law Reporter, Vol. 7—528.]

**Peremptory Instructions.**

In a suit against a railroad company for the death of its employe when the testimony is conflicting it is the province of the jury to consider, compare and weigh it; and where there is any evidence to establish the matter in issue, a request for a peremptory instruction should not be granted.

APPEAL FROM LINCOLN CIRCUIT COURT.

January 26, 1886.

OPINION BY JUDGE HOLT:

Dudley Tubbs, while in the employ of the Cincinnati Southern R. Co. as a laborer, was so injured by a passing train of the appellee as to cause his death. He was engaged at the time with other workmen, all of them being in charge of a foreman, repairing a trestle, which was thirty or forty feet high, and one hundred twenty-one feet long. There were projections of the frame at certain places, but they extended but a foot beyond a passing car, while the ties of the structure were so close that a person could not lower himself between them. The only safe means, therefore, to avoid being struck by a passing train, if upon the trestle at the time, was to get off it at either one end or the other. The hands

had a standing order to do so, and to remove all obstructions upon it when they did so.

Sometime before the time came for the passing of the freight train by which the deceased was injured, the foreman notified him and his two coworkers to vacate, as it was about train time. The only witness who attempts to fix the time when this occurred says that it was about fifteen minutes before the accident. It appears, however, that after so telling them the foreman left them and went northwardly upon the track for half mile, where he met the train, removed the flag from the track, and signaled the engineer to go on. He did so, giving the alarm whistle at about this time, and from this point to the trestle it is a heavy down grade. Just north of the trestle is a cut and a curve, which prevents the train officers from seeing the center of the trestle, where the men were at work, until within from three hundred to seven hundred feet of it, as variously estimated by different witnesses. The engineer of the train discovered them as soon as it came within sight of them, and he immediately signaled the danger with his whistle, reversed the engine, and the brakes were applied. Two of the three workmen escaped by running to the south end of the trestle, but when within a few feet of it the deceased was struck by the engine. The evidence shows that he either stopped in his flight to get a small rope which was upon the track, or that he got to the end of the trestle and returned to get it, and then before he could get off again was injured. It is clearly shown that after the engineer saw the workmen it was impossible to stop the train in time to save the deceased.

This action was brought by his administrator, who alleges that his death was caused by the wilful neglect of the appellee's agents in operating the train. At the close of the appellant's testimony, by which the above state of facts were substantially developed, the court at the instance of the appellee peremptorily instructed the jury to find in its favor. The correctness of this ruling is the sole question now presented.

When the testimony in a case is conflicting, it is the province of the jury to consider, compare and weigh it, guided by hypothetical instructions. If testimony has been offered tending to opposite conclusions, the power of the judge is supervisory only. So carefully has the jury's prerogative been guarded in this state that it

may be regarded as a rule too long settled to now admit of a departure that where there is evidence tending to establish the matter in issue, a request for a peremptory instruction should not be granted, although the trial judge might then be of the opinion that if a verdict were rendered adversely to the request he would be compelled to grant a new trial, and this is the rule whether the conflict of testimony arises upon the plaintiff's testimony alone or after both sides have introduced their evidence. But a party, before offering any testimony may, by conceding the truth of the evidence offered by his adversary and of every fact which it conduces to prove, ask the court for a peremptory instruction.

In this case the appellant's testimony was conflicting as to the rate of speed of the train at the time of the accident. Those familiar with the running of trains say it was three or four miles an hour, while two other witnesses say it was fifteen miles. We think, however, that the latter are nearer right than the former, because the train ran some three hundred yards beyond the trestle before it could be stopped, although the engine had been reversed and brakes applied when the engineer first came in sight of it. It is also urged that the train was a long one, and lacked one brakeman of the usual number, but it is shown that the conductor was acting for him. Upon a careful consideration of the testimony we fail to perceive any evidence whatever showing wilful neglect or any negligence of any character.

The deceased had been notified by his foreman that it was nearly train time and to get off the trestle. The latter then left and upon meeting the train, a half a mile away, removed the flag and notified the engineer of the train that all was right and to go on. The latter then sounded his whistle and went on and had no knowledge or chance to know that the deceased was upon the trestle until the train emerged from the cut, and then it was impossible to avoid the accident, although every effort possible was made to do so. Admitting that the speed of the train was fifteen miles an hour, we do not think that this evidences any neglect, because it was a heavy train and a heavy down grade, and although the engineer knew that the deceased had been at work upon the trestle for several days, yet he had been notified by the foreman that the way was clear.

Everything within reasonable human prudence and caution seems

to have been done by the officers of the train to save the unfortunate man, and there being no evidence whatever of any neglect of any degree upon their part the judgment below is *affirmed.*

*Welch, Saufley & Miller, for appellant.*

*Simrall & Mack, Hill & Alcorn, for appellee.* ·